EXCHANGE BANK OF BLOOMFIELD, Appellant, v. ILLINOIS LIFE INSURANCE COMPANY, Appellee.

**INSURANCE:** Action on Policy—Rights of Assignees. Evidence reviewed, in an action by a bank to which a life insurance policy had been assigned as security, to reinstate the insurance, and held insufficient to show that the insurance company, at the time of the payment of a premium by the bank, had concealed the fact that the policy was subject to a prior lien, which was to be paid off at maturity, in addition to a loan which the bank had acquired.

**INSURANCE:** Action on Policy—Rights of Assignee of Policy. An assignee of an insurance policy has no other or greater rights than could be asserted by the assignor, had no assignment been made.

**INSURANCE:** Action on Policy—Reinstatement. Evidence reviewed, in an action by a bank to which a policy of insurance had been assigned, to have the same reinstated, and held insufficient to show that the bank was entitled to have the policy reinstated after it had been canceled for nonpayment of premiums, notwithstanding the fact that the assignee offered to pay back the premium and discharge the loan made by the insurer.

**INSURANCE:** Action on Policy—Failure to Attach Loan Agreement to Policy. Where an insurance company issued a 20-year payment contract in lieu of a life payment contract, under an agreement by which the excess of yearly premiums on the

latter policy over the premiums already paid during the life of the insured was evidenced by a first lien on the proceeds of the 20-payment policy, the agreement as to the certificate of loan was a collateral one, and did not fall within Sec. 1819, Code, 1897, providing that life policies shall have endorsed thereon a copy of any application or representation of the insured which in any manner affects the validity of the policy; and therefore the fact that the loan agreement was not set forth in the application or policy did not preclude the insurer from relying thereon in an action by the assignee of the policy to have the same reinstated.

INSURANCE: Action on Policy—Suit for Reinstatement by Assignee. A suit by the assignee of a life insurance policy to have the same reinstated, or to recover from the insurer for its failure to disclose a loan against the policy, is not an "action" on the policy, within Sec. 1819, Code, 1897, requiring the application or representations affecting the validity of the policy to be endorsed thereon.

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

OCTOBER 14, 1919.

ACTION in equity to reinstate a life insurance policy for $6,000, issued by the defendant to Charles H. Fuller, and afterward canceled. The material facts and nature of the issues joined will be found in the opinion. A money judgment is also demanded. The trial court dismissed the bill, and plaintiff appeals.—*Affirmed.*

*Payne & Goodson,* for appellant.

*H. W. Price, W. D. Tisdale, Hugh T. Martin,* and *John F. Scarborough,* for appellee.

WEAVER, J.—Steckel & Son are partners, doing a banking business under the name "Exchange Bank of Bloomfield, Iowa," and the defendant is a life insurance company, incorporated and having its principal place of business in Illinois.

Stated as briefly as practicable, the claim of the plain-

tiff is that, in February, 1909, one Charles H. Fuller, who was carrying a policy of life insurance for $6,000 in the defendant company, being indebted to the Exchange Bank, secured payment of the same by pledge of said insurance as collateral; that thereafter, in August of the same year, Fuller being still indebted to the bank, and desiring further credit and further advances to pay the accruing premiums on said policy and interest on a prior loan of $1,000 which had been made by the insurance company to him, the plaintiff, for the purpose of learning whether such credit could be safely extended to Fuller on the security afforded by said collateral, wrote the defendant, asking information as to the terms and conditions of the policy, and what indebtedness or charges thereon were held by the defendant; that, answering such inquiries, defendant wrote plaintiff, in substance and effect, that its claim or lien on said policy, in addition to current premium charges, was an indebtedness of $1,000, with interest at 6 per cent (said sum representing the loan above mentioned); that, relying upon such information, plaintiff did advance money to or for Fuller to a considerable amount, and refrained from enforcing collection of his existing indebtedness to the bank; and that, except for such information, the credit would not have been given, and the existing indebtedness could and would have been collected; that thereafter, in the year 1912, the defendant, claiming that the policy had been forfeited for nonpayment of premium, entered into a settlement with Fuller, by which the latter surrendered his policy or submitted to its cancellation, upon the consideration that defendant discharge his indebtedness for the loan of $1,000, also discharge a further alleged lien upon said policy for $1,329.06, with accrued interest, and issue to him a paid-up policy of $70; and that such settlement was made without the knowledge or consent of the plaintiff.

The petition further alleges that, in answering plain-

tiff's inquiry hereinbefore referred to, concerning Fuller's policy and defendant's liens or claims thereon, defendant concealed or withheld the fact of its alleged prior demand of $1,329.06, and plaintiff was left in ignorance thereof until after the settlement between the company and Fuller; that, had plaintiff known the truth in that respect, it would have refused Fuller's request for credit, and would have enforced the collection of its existing claims against him, but, by the time plaintiff had learned the truth, said settlement had been accomplished; and that, meantime, Fuller had become insolvent.

The petition is stated in three counts. In the first count, after stating its claim as aforesaid, plaintiff asks a money judgment for damages, substantially after the manner of a petition at law. In the other counts, plaintiff sets up two assignments, by which Fuller transfers to the bank all his claims against the company on account of said policy, and for the reinstatement of the policy as a subsisting contract. It then avers that, by the terms of the insurance policy, the alleged prior lien of $1,329.06 was to be paid off by dividends and profits, accruing from time to time upon the policy, and that such indebtedness had, in fact, been largely, if not entirely, paid before the settlement between the company and Fuller was made, and that the amount charged against the latter, in arriving at the settlement, was greatly exaggerated, or was entirely an overcharge, for which a recovery is demanded.

Plaintiff offers to do equity by paying to defendant all accrued and unpaid premiums and all the proper charges and liens on said policy, except the alleged prior lien of $1,329.06, and asks that the cancellation of the policy be vacated and set aside, and that the original contract between the insurer and insured be reinstated.

I. The merits of this case depend quite entirely upon the meaning and effect to be given to the correspondence

which took place between the parties in the year 1909, and to which we have already made reference. It consists of two letters written by the plaintiff, and the answers thereto by the defendant, reading as follows:

1. INSURANCE: action on policy: rights of assignees.

"August 21, 1909.

"Illinois Life Insurance Co.,
"Ft. Dearborn Bldg.,
"Chicago, Ills.
"Gentlemen:

"Mr. Charles H. Fuller, Unionville, Iowa, sends us your notice for premium, $302.94, and interest on policy loan, $60, under No. 22182, but your notice does not state when same will be due. Please forward us the date therefor, so we can look after the matter for Mr. Fuller, who is a customer of ours.

"We understand from him that you hold a loan of $1,000, with his policy as collateral. Is that correct, and when is the loan due, and up to what date has the interest been paid, and what rate of interest does it draw?

"Yours truly,

"W. J. Steckel, Cash."

"Illinois Life Insurance Company, Chicago.

"August 24, 1909.

"Mr. W. S. Steckel, Cashier,
"The Exchange Bank,
"Bloomfield, Iowa.
"Dear Sir:

"We have your letter of August 21st, respecting the due date of the premium on policy No. 22182, Chas. H. Fuller.

"I note your statement that the notice we sent does not show the due date of the premium. I do not understand this, as all our premium notices show the date the premium falls due.

"In Mr. Fuller's case, premium on the policy and interest on the loan fall due on November 18th. The premium is $302.94, and interest on the loan, if he desires to renew it, is $60. The loan is for $1,000, and falls due, as above stated, on September 18th. We are willing, however, to renew the loan for another year upon the receipt of the interest.

"Yours truly,

"B. J. Stookey,

"B. J. S.                    Assistant Secretary."

"Sept. 17, 1909.

"Illinois Life Ins. Co.,

"Ft. Dearborn Bldg.,

"Chicago, Ills.

"Gentlemen:

"Enclosed herewith please find check C. H. Fuller, $362.94, being for premium $302.94, and interest on policy loan, $60, due under No. 22182, 18th inst. Please send us receipt for Mr. Fuller for the premium and the interest. Also, if you will let us know how many payments have been made on his policy, when it matures, and approximately what he will receive. How many years was the policy taken out for, and are all the payments made up to date? We presume they are.

"You write us that you have no blanks to make duplicates of this policy on, and would you be willing to send the original to us for examination, after which it would be returned to you promptly.

"Enc.                    Yours truly,

"W. J. Steckel, Cash."

"Illinois Life Insurance Company, Chicago.

"Sept. 22, 1909.

"P. A.

"No. 22182—I. L.

"Mr. W. J. Steckel,

"Bloomfield, Iowa.

"Dear Sir:

"You will find herewith receipt covering the premium on policy held by Charles H. Fuller, No. 22182, which also includes interest on renewal of his policy loan to September 18th, 1910.

"Mr. Fuller's policy was issued on September 18th, 1901, in lieu of an assessment policy he formerly carried in the Bankers' & Merchants' Life Association. In issuing the 20-payment policy, the Illinois Life dated it back to September 18th, 1895, thus giving him the benefit of the age 43 premium rate, and the 6 years he carried the assessment policy.

"All computations of time are made from September 18th, 1895, and no further payment of premiums will be required on the policy after the annual premium due September 18th, 1914. He is required, therefore, to make five more annual payments.

"The cash surrender value of the policy at the end of the 20 years is $4,272, plus the accumulations that will be apportioned if the policy is in force at that time, and all premiums paid, and less any indebtedness against the policy at that time.

"The policy is known as a 20-payment guaranteed annual addition.

"The policy is held by the company as collateral security for a loan, and it is against the rules of the company to permit its collateral to go out of its hands. If you have a correspondent in this city, and desire that he make an extract of this policy, we will be glad to permit

him to do so, if he will call at this office with proper authority from Mr. Fuller, or we will be glad to give you any additional information by mail.

"Yours very truly,

"B. J. Stookey,

"B. J. S.                           Assistant Secretary."

To a correct understanding of plaintiff's contention with reference thereto, an explanation should here be made of the nature of the insurance company's claim to its alleged prior lien of $1,329.06 upon the policy. It appears without dispute that, in the year 1896, the Bankers' and Merchants' Life Association issued to Fuller a life policy for $6,000. Fuller had carried this policy about 6 years when said Life Association was consolidated with or absorbed by the defendant in this case. About the same time, defendant and Fuller entered into an arrangement by which Fuller gave up the old policy, and took another, issued by the defendant, for the same amount, but upon a different plan, the former having been a life payment contract, and the latter a 20-payment contract, subject to a credit for the 6 years in which the insurance had been carried in the old company, thus making the new contract mature in 14 years. By reason of the change in plan of premium payments, an agreement was effected by which the excess of yearly premiums on the 20-year plan over premiums on the life plan for the 6 years before the exchange of policies was computed at $1,329.06, and for this sum Fuller gave to defendant a so-called "certificate of loan," by the terms of which the debt should stand as a preferred charge or lien upon the insurance. As we understand its terms, this indebtedness was to draw interest; but, except as the same might be reduced by application thereto of dividends and profits, neither principal nor interest was subject to demand or to enforced payment until the policy should ma-

ture by the death of the insured, or by the end of the distribution period.

It is this indebtedness which plaintiff alleges the defendant failed to disclose in answer to its inquiries in the year 1909, thereby deceiving and misleading the plaintiff as to the value of the policy, and causing the loss for which a recovery of damages is now claimed. This claim makes it necessary to consider first whether the insurance company to which the inquiry was addressed understood, or, as persons of ordinary experience and intelligence ought to have understood it, as calling for such information. If the company knew, or ought to have known or understood, from the matter and manner of such inquiry that its failure to mention the "certificate of loan" might reasonably lead the plaintiff to give Fuller more credit than would have been extended to him if the fact had been made known, and plaintiff, acting as a reasonably prudent person, was thereby misled into giving Fuller credit which would otherwise have been refused, and loss has resulted to the plaintiff therefrom, its right to a recovery has been sufficiently established. On the other hand, if the correspondence had between the parties is not fairly and reasonably susceptible of such interpretation, then plaintiff has no right of action, even though it would have acted otherwise had it known of the existence of defendant's prior lien.

We have read and re-read the four letters constituting this correspondence, to ascertain, as nearly as may be, how they must have been understood by the parties writing them, and by those to whom they were sent. Experienced and intelligent business men, desiring to obtain accurate knowledge of matters affecting their own interests, realize that, if the information sought is to be of any real value, their inquiries therefor must be definite and specific. The person to whom such question is addressed is not expected to go beyond the scope of the inquiry, and volunteer infor-

mation not asked for. It was an easy thing for the plaintiff to say to the company, if such was the case, that it had been asked to give credit to Fuller on the pledge of his policy, and therefore wished to learn to what extent such policy was already incumbered by prior liens and charges. To such an inquiry, either in words or in substance, the defendant, if it assumed to answer at all, would have been bound to state the whole truth; and if it failed to do so, thereby misleading the plaintiff, to its injury or loss, liability for the deceit so perpetrated would be indisputable.

But we find nothing in the letters before us to which this rule of liability is applicable. The first letter from plaintiff furnishes the keynote to the entire correspondence. It contains no statement or suggestion that Fuller was plaintiff's debtor, or was asking for credit or seeking to use the policy as collateral. After an introductory paragraph, asking the date when the premium on the policy and interest on the loan would be due, in order that plaintiff might attend to it "for Mr. Fuller, who is a customer of ours," the letter concludes with this statement:

"We understand from him that you hold a loan of $1,000 with this policy as collateral. Is that correct, and when is the loan due, and up to what date has the interest been paid, and what rate of interest does it draw?"

This shows that plaintiff had already been informed by Fuller of the "loan of $1,000," and the inquiry is directed solely and specifically to this loan. To this the defendant promptly replied, with the simple statement that the loan was for $1,000, falling due on November 18th of that year, and expressing a willingness to extend or renew it for another year, upon receipt of the interest.

Several weeks later, plaintiff again writes, enclosing remittance to cover premium and interest charges, and asking that a receipt for such payments be returned "for Mr.

Fuller." This is followed by the only other inquiry.

"Also, if you will, let us know how many payments have been made on his policy, when it matures, and approximately what he will receive. How many years was the policy taken out for, and are all payments made up to date? We presume they are."

This, with a request that the policy be sent to the plaintiff for examination, includes everything in the line of a request for information. Answering the request, the defendant declined to return the policy, while held as collateral security, but offered to permit anyone calling at its office, with authority from Mr. Fuller, to examine the policy and make copy of the same, and offered to give "any additional information by mail." Defendant also, in the same letter, explained that the policy was issued in lieu of a former policy held by Fuller in the Bankers' and Merchants' Life Association; that five more annual payments were required; and that the cash surrender value of the policy "at the end of 20 years is $4,272, plus the accumulations that will be apportioned if the policy is in force at that time and all premiums paid, and less any indebtedness against the policy at that time."

This, as will readily be seen, answers explicitly every inquiry made,—the premiums paid and the number still required, the date when the policy matures, and approximately what the insured will be entitled to receive at the end of the 20-year period, *"if the policy is in force at that time * * * less any indebtedness against the policy at that time."*—and the plaintiff is assured of any "additional information," if it shall be desired. No further question appears to have been asked, and not until some 5 years later, and 2 years after the policy had been forfeited or surrendered, did plaintiff ever inform the company that it claimed any interest in the policy or in the insurance thereby afforded.

There is nothing in either of the two letters written by plaintiff inconsistent with the theory that it was writing as the agent of Fuller, nor anything which can be fairly construed as a warning to defendant that plaintiff had acquired or was about to acquire any interest in the policy. The first letter speaks of Fuller simply as "a customer of ours." A customer of a bank is by no means necessarily a borrower or prospective borrower. The bank depositor who owes no man anything and asks no credit is as truly the bank's customer as is the person to whom the bank lends the money so deposited. It is a matter of common knowledge that practically every bank looks after the payment of insurance premiums and the payment of taxes and assessments and other recurrent charges, for the convenience and accommodation of its customers, and the fact that such payments are made by the bank affords no reason why the party to whom such payments or remittances are made should infer that the bank sending them is extending credit to the customers for whom it is acting.

It seems to us very clear that the inquiries made by the plaintiff in this case were fairly and fully answered, and, the defendant's offer to furnish any "additional information" desired not having been acted upon, there is nothing in the record upon which to charge it with liability for the plaintiff's alleged losses.

The rule of law for which plaintiff contends, and in support of which its counsel cite many authorities, cannot be doubted; but the insurmountable obstacle to its right to a recovery is in the failure to disclose a case to which such rule is applicable. Only by a strained and unnatural construction of the language of the letters can there be found anything of a deceptive or misleading character. The ingenuity of counsel finds something sinister or crafty in the reference by the defendant in its last letter to the fact that it was holding the policy "as collateral for a loan."

Those words were used, not in answer to any question, because plaintiff's first letter shows that it knew the policy was so held, but in explanation of its rule not to part with the possession of a policy so held by it. The statement that it was held as collateral to a loan was strictly and literally true, and the loan for which it was so held was the loan for $1,000, and nothing else. It did not hold the policy as collateral security for the prior certificate of loan. That loan was protected by the terms of the certificate, which provided that, when the policy became payable, the amount due upon such loan should be first deducted from the insurance; and if Fuller, or plaintiff for him, had paid the defendant the amount of the loan for $1,000, it would have been his or their right to demand a redelivery of the policy.

There is no evidence on which to sustain the finding for which counsel so earnestly argue, that defendant "purposely omitted and concealed from plaintiff" the matter of its claim on the certificate of loan, or that defendant had knowledge that the Exchange Bank was honoring Fuller's checks, and because thereof it knew that plaintiff's inquiries "related to the question of propriety of honoring and paying the checks, furnishing money therefor, and that the charges against the policy would determine whether the checks would be paid." Surely, this is drawing the "long bow" of logic to its breaking point. What fact is to be found in the record which ought to have suggested to the defendant that, because Fuller's checks were honored and paid by the bank on which they were drawn, they represented an overdraft or the extension of credit by the plaintiff, rather than payments from the credit side of a deposit account, or that anything contained in the defendant's letters could reasonably have influenced plaintiff to pay checks which would otherwise have been dishonored? Plaintiff never notified the defendant that it was making payments

for Fuller on the faith of the policy as security. The mere fact that Fuller paid the premiums in checks on the bank which were honored, or that, in one or more instances, payments were sent in directly by the bank itself, is without any significance upon these questions. If plaintiff was not content to trust fully to the honor and responsibility of Fuller, a frank and clear statement to the company that it claimed a right in or to the policy was the most obvious and most effective method of preserving its rights, if any it had; and, until shortly before this suit was brought, it gave the defendant no reason to conclude that its connection with Fuller's insurance was anything more than that of a banker, through whom the various payments were made.

There is, in short, no merit in the plaintiff's claim that it was deceived or misled to its injury by the information it received from the defendant. Indeed, it is hardly too much to say that, upon plaintiff's own showing, it is fairly apparent that the indebtedness to it by Fuller has been paid and satisfied, and that it has never lost a dollar by reason of its alleged dependence on the letters written by defendant.

II. Our conclusion that the facts shown do not justify a finding for the plaintiff on his claim for damages because of defendant's alleged failure to truthfully or fully answer its inquiries made in 1909 renders unnecessary any discussion of many subsidiary questions which have been dwelt upon by counsel for both parties. It is

2. INSURANCE: action on policy: rights of assignee of policy.

necessary, however, that we further inquire into the case made by plaintiff for equitable relief under the assignment made to it by Fuller and wife. It is, of course, an elementary proposition that plaintiff's rights as such assignee are not other or greater than could have been asserted by the Fullers themselves, had no assignment been made.

It appears without dispute that Fuller defaulted in the payment of the premium due in September, 1911, and the company, at his request, extended the time for two months on his note. When the note fell due, he again defaulted, and the insurance lapsed; but, upon his application and re-examination, he was reinstated, and gave another note for the same premium, due in January, 1912. When that note became due, it was again extended, at his request, to February 18, 1912, and then once again for an additional 10 days. Not being then paid, and further extension not being given, the insurance again lapsed, as provided by the terms of the contract. After such lapse, the company sent him a blank application for reinstatement to sign and return, with a remittance for the payment in default. He sent in the application, but no money. From this date to September 14, 1912, the company repeatedly wrote to Fuller, urging him to take the necessary steps to restore his policy; but, through inability to make the payment, or for some other reason, he failed to do so. Finally, the company wrote him:

3. INSURANCE: action on policy: reinstatement.

"We desire to dispose of your case one way or the other, and unless you see your way clear to make application for reinstatement within the next 10 days, we will issue a paid-up policy of $70, representing your equity in the policy at the time of lapse, and send it to you."

Fuller still remaining inactive, the company, on September 14, 1912, did issue to him a paid-up policy of $70, and canceled his loan of $1,000, and his certificate of loan for $1,329.06 and accumulated interest. Thus the situation remained for the next two years, when this action was begun. It is claimed now that Fuller had been lulled into a feeling of security by the indulgence of the company on numerous occasions in the matter of premium payments, and that an inequitable advantage was then taken of him in insisting upon the lapse of the policy. It is further al-

leged that, in any event, the paid-up policy for $70 was very much less than Fuller was entitled to.

The bare statement of the foregoing facts is enough to demonstrate that the company did not hasten to take advantage of the lapse of payment by Fuller, but, on the contrary, it showed rather extraordinary indulgence and patience in carrying him for nearly an entire year upon his repeated promises to pay, promises which remained to the end unperformed. His failure may have been due to his misfortune, rather than his fault, but for this the defendant is not responsible. The situation so portrayed suggests the inquiry, Where during all this time was the plaintiff, if, as it now claims, it was, in effect, the actual or qualified owner of the policy, relying upon it as security for the credit it had extended to Mr. Fuller, and therefore vitally interested in seeing that the premiums and interest due to the defendant were duly paid? This question is somewhat aside from the discussion of the branch of the case now under discussion, but it is one of several sidelights which tend to illuminate the merits of plaintiff's claims to equitable relief.

Passing, then, from the allegation of inequitable advantage by the defendant in holding the policy forfeited as being wholly unproven, we have then to ask whether there is any proof of fraud or mistake in the settlement to which we have alluded. The plaintiff placed an officer of the defendant on the witness stand, and showed by him that, on the date of the lapse of Fuller's policy, the reserve value of his policy was $3,379.62. From this sum deductions were made as follows:

Unpaid premium .............$  166.44
Cash loan ................... 1,000.00
Certificate of loan and interest.. 2,162.06
                            _____
                            $3,328.50

—leaving a remainder of $51.12, which sum purchased a paid-up policy of $70. In other words, by this settlement Fuller's indebtedness to the amount of $3,328.50 was paid off, and he received a small paid-up policy, of a cash value of $51.12. It is also not to be overlooked that he had had the protection of an insurance of $6,000 during the 16 years from the date of his first policy until he allowed the last one to lapse. It may be, as counsel argue, that the return received by the insured was not in just proportion to the premiums he had paid, but it appears to be all his contract calls for, in the event he allowed it to lapse. The policy was evidently one of those which provide for an accumulation period, upon conditions by which, if the insured lives out the term, and keeps his insurance in force, the benefits are ordinarily large and liberal; but if he fails to out-live the term, or permits his policy to lapse before the right to a distribution matures, the benefits are by no means so satisfactory. We find nothing in the evidence from which it can be said that, under the conditions of his policy, Fuller received in the settlement anything less than he was entitled to. True, appellant is not bound by the evidence of the defendant's secretary as to the amount which should have been paid Fuller; but, if it desires to impeach the sufficiency of the settlement, the burden is upon it to show that Fuller was entitled to a greater sum. In this there is a signal failure. Counsel have presented in argument several ingenious methods of computation, but they have the misfortune to be without solid basis in the terms of the agreement.

It is true, no doubt, that the company or its officers sought to encourage Fuller to keep up his policy, and pointed out that the accumulations would show or did show a yearly increase; but to enjoy or obtain the benefits of these accumulations, it was necessary for him to persevere to the end—and this he did not do. It is quite clear

that under no provision of the contract could the insured drop out during the term, and demand a distribution to him of the accumulations guaranteed for the end of the 20-year period in proportion to the time he had carried the policy. If it be true that the secretary, as a witness, evaded or failed to answer counsel's inquiry in regard to the accumulations, that fact may very properly be considered on the question of his veracity or the value of his testimony, and may also justify an unfavorable inference against the company, if there be any substantial conflict in the testimony on that point; but the entire lack of any evidence on which to base a conclusion more favorable to the appellant cannot be supplied by such inference. The offer to pay the past-due premiums and the cash loan of $1,000, on condition that the policy be reinstated in force, if made by Fuller himself, would give him no right to relief in a court of equity; and, as we have before suggested, plaintiff, as Fuller's assignee, stands in the shoes of his assignor, and the trial court did not err in so ruling.

III. Preliminary to the trial below, plaintiff moved the court to strike all those parts of the defendant's answer setting up or relating to the so-called certificate of loan, because the contract of insurance is an Iowa contract, and, the said agreement or certificate of loan not being mentioned or set forth in the application, and endorsed upon or attached to the policy, it cannot be relied upon by the company as a defense, in whole or in part, to this action. The motion was denied, and error is assigned thereon by the appellant. It is conceded that neither the application for this policy nor a copy thereof was endorsed upon or attached to the policy, and it is the theory of the appellant that, under our statute, Code Section 1819, the company is precluded from pleading, alleging, or proving the agreement between itself and

4. INSURANCE: action on policy: failure to attach loan agreement to policy.

the insured, relating to the certificate of loan. Without attempting to decide the question discussed by counsel, whether the policy is to be considered an Iowa contract or an Illinois contract, we are quite clear that on neither theory does the statute referred to have any controlling effect upon the rights of the parties. The statute cited provides that an insurance company issuing a policy of life insurance shall endorse thereon, or attach thereto, a true copy of "any application or representation of the assured which by the terms of the policy are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy." The omission so to do does not render the policy invalid, but such neglect has the effect to preclude the insurer from "pleading, alleging or proving such application or representations, or any part thereof, or the falsity thereof, * * * in any action upon such policy."

In so far as this action is based upon the alleged failure of the defendant to truthfully or fully answer its inquiries in the correspondence of 1909, it is in no proper sense "an action upon such policy," and manifestly, the statute has no application thereto. Neither is an equitable proceeding to reinstate a lapsed policy an "action upon the policy," though it is quite true that, in such action, it may become necessary to prove and consider the terms of the contract, so far as they affect the right to reinstatement, and it is possible that, under some conditions, the statute may become an obstacle to such proof. The primary purpose of the statute is to protect policy holders and their beneficiaries against defenses based on alleged breaches of warranty or false representations by the assured or upon other contract provisions, except such as are found in the policy itself or in the application which is attached or endorsed by copy upon the policy. Now, in

5. **Insurance:** action on policy: suit for reinstatement by assignee.

this case, the company does not plead or put in evidence the application upon which the policy was issued, nor is it made to appear that such application embodied the certificate of loan or contained any reference thereto. There is nothing, indeed, to indicate that such a reference was necessary to the completeness of the application.

The certificate of loan was, in effect, a collateral agreement whereby, the policy here in question having been substituted for the one issued by the Bankers' and Merchants' Association, it was arranged that the excess in cost of the insurance upon the new plan over its cost upon the old plan should be treated as a loan, and stand as a lien upon the insurance, and be deducted therefrom when the policy matured, but should not otherwise constitute a personal indebtedness against the insured.

If appellant's theory be correct, and the policy holder, having obtained insurance by acknowledgment of a debt to be paid out of the proceeds of the policy when carried to its maturity, may let his policy lapse by failure to pay an annual premium, and then call the statute and the courts to his aid to reinstate his policy in full force, freed from the claim of the company for payment of his acknowledged debt, then the law intended for his just protection is perverted into a means of grave injustice to the other party. No precedent for the appellant's proposition is cited by counsel which supports their proposition in this respect, and we are unwilling to establish one. Indeed, the very question seems to have been decided by this court adversely to the appellant in the recent case of *Long v. Northwestern Nat. Life Ins. Co.*, 186 Iowa 369, where the action was brought directly upon the policy against the insurer, and it was held that a loan agreement like the one in the instant case was no part of the application, and that Code Section 1819 has no application thereto.

All other questions argued by counsel are necessarily controlled by our conclusions herein announced.

The judgment below was right, and it is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.